```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                    :
NAPSTER, LLC,                                       :
                                                    :
                          Plaintiff,                :    09 Civ. 318 (PAC)
                                                    :
          - against -                               :
                                                    :    OPINION & ORDER
ROUNDER RECORDS CORP.,                              :
                                                    :
                          Defendants.               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 25, 2011
```

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Napster, LLC ("Napster") brings this action against Defendant Rounder Records Corp. ("Rounder") asserting two claims for breach of contract. Napster operates an online music subscription service. For a fee, subscribers stream, conditionally download, and permanently download music through Napster's website. Rounder is a record label that specializes in American roots music, including bluegrass and old-time country. Napster entered into two contracts with Rounder, one in 2001 and the other in 2006, to provide music for sale on Napster's website. The dispute is over whether Rounder is contractually obligated to indemnify Napster for costs incurred due to copyright infringement lawsuits brought by the owners of musical compositions embodied in the sound recordings provided by Rounder. Napster contends that under both contracts, Rounder was required to procure mechanical licenses for use of the infringed musical compositions.[1] According to Napster, since it was Rounder's duty to

---

[1] The Copyright Act, 17 U.S.C. § 101 et seq., recognizes "two types of copyrights in a musical recording." Soundexhange, Inc. v. Librarian of Congress, 571 F.3d 1220, 1222 (D.C. Cir. 2009). One is for the underlying musical composition (the words and music), referred to as a "musical work." See 17 U.S.C. § 102(a)(2); In re Napster, Inc. Copyright Litig., 377 F. Supp. 2d 796, 800 (N.D. Cal. 2005). The other is for a "sound recording," a recorded performance of a musical work. 17 U.S.C. §§ 101 (defining "sound recordings"), 102(a)(7); Soundexchange, 571 F.3d at 1222. Musical compositions are subject to the compulsory licensing scheme set forth in Section 115 of the Copyright Act, under which "mechanical

obtain the licenses, Rounder is bound under the contracts to provide indemnity for the costs incurred defending and settling the claims brought by the composition owners. Rounder denies any such obligations and moves to dismiss the Second Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, Rounder's motion is granted. Napster's claim based on the 2001 contract is dismissed because the contract was rescinded, thereby extinguishing any claim Napster might have had for its breach. Napster's claim based on the 2006 contract is dismissed for failure to comply with its advance consent provision and it was not Rounder's responsibility to procure mechanical licenses for the infringing compositions.

**I. Facts**[2]

In August, 2001, Napster's predecessor entered into a Content Distribution and Integration Agreement ("2001 Agreement") with Rounder. (Second Amended Complaint ("SAC") ¶ 7; Ex. A (2001 Agreement)). In the 2001 Agreement, Rounder agreed to provide Napster with "Company Content" (defined to include sound recordings owned or controlled by Rounder) for use in connection with Napster's subscription service. (2001 Agreement §§ 2-3). The license granted by Rounder applied to conditional downloads and streams, but not to permanent downloads. (Id. § 2.1).[3]

---

licenses" are conferred upon payment of a set royalty rate. See 17 U.S.C. § 115; Rodgers & Hammerstein Org. v. UMG Recordings, Inc., No. 00 Civ. 9322(JSM), 2001 WL 1135811, at *1 (S.D.N.Y. Sept. 26, 2001); 6 Nimmer on Copyright § 30.02(F)(2) ("Nimmer"). As an alternative to its statutory notice and royalty requirements, section 115 also allows copyright owners and aspiring licensees to negotiate the terms and rate of royalty payments. See UMG Recordings, 2001 WL 135811, at * 1. Mechanical licenses are not available for sound recordings. See 2 Nimmer § 8.04(A).

[2] The facts are taken from the Second Amended Complaint, the relevant agreements (which are attached to the Second Amended Complaint), and materials subject to judicial notice.

[3] "Permanent downloads" are permanently copied to the subscriber's computer; "conditional downloads" are downloaded to the subscriber's computer but deleted if the subscription is terminated; "streams" are

Section 2.3 of the 2001 Agreement sets forth the parties' respective obligations to obtain the necessary licenses from third parties, providing broad responsibility for Rounder to obtain mechanical licenses. Section 11, "Indemnification," sets forth the parties' respective indemnity obligations. Rounder agreed to indemnify Napster for all costs arising out of any breach of the agreement or any claim that use of the Company Content infringes a third party's rights.

On December 16, 2005, Napster was sued for copyright infringement by, among others, MSC Music America, Inc. ("MSC Music"), a copyright administration company, and the owners of various copyrighted musical compositions (collectively, "MSC Music Parties") in the United States District Court for the Middle District of Tennessee ("First Infringement Action"). (SAC ¶ 9); see Docket in MSC Music Am., Inc. v. Napster, Inc., No. 3:05-cv-01053 (M.D. Tenn.).[4] The MSC Parties claimed that Napster made their copyrighted compositions available without obtaining the necessary mechanical licenses. (Complaint in First Infringement Action ("First Infringement Complaint") ¶¶ 33-46, Declaration of David Baum ("Baum Decl."), Ex. D).[5] Of the 800 copyrighted musical compositions at issue, 17 were allegedly embodied in sound recordings provided by Rounder to Napster. (SAC ¶ 10).

During discovery in the First Infringement Action, the MSC Music Parties realized that they could not maintain an infringement action based on a number of the works at issue. (SAC ¶ 10). The action was accordingly dismissed without prejudice on

---

transmitted in real time and are not downloaded. (2001 Agreement at 16-17). The 2001 Agreement contemplates the possibility of a separate contract pertaining to permanent downloads. (Id. § 2.1(c)).
[4] Docket sheets, as public records, are properly subject to judicial notice. See Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006).
[5] The Court can take judicial notice of First Infringement Complaint because it is incorporated by reference in Napster's Second Amended Complaint and because it is a public record. See Mangiafico, 471 F.3d at 398; Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir. 2000).

3

November 8, 2006.  (Id.).  In defending the lawsuit prior to dismissal, however, Napster incurred approximately $571,111.40 in costs and attorneys' fees.  (Id.).

On April 1, 2006, while the First Infringement Action was still pending, Napster and Rounder entered into a Content Agreement ("2006 Agreement").  (SAC ¶ 19; 2006 Agreement, SAC, Ex. B).  The 2006 Agreement expresses the parties' intent to terminate the 2001 Agreement.  The second "whereas" clause states: "WHEREAS, Company and Napster have previously entered into a certain Content Agreement dated as of August, 2001 (the 'Prior Agreement'), which the parties wish to hereby terminate and supersede."  (2006 Agreement at 1).  The 2006 Agreement also contains a merger clause, which provides, "[t]his Agreement will constitute the entire agreement between the parties with respect to the subject matter hereof and will supersede all previous commitments with respect hereto."  (Id. § 13).

In the 2006 Agreement, as in the 2001 Agreement, Rounder agreed to provide Napster with "Company Content" for use in connection with its online subscription service.  "Company Content" includes "Company Masters," which are defined as "the Recordings owned and/or controlled by the Company . . . [or an affiliate] that are intended for general public release (whether commercial or promotional)."  (Id. at 7).  Unlike the 2001 Agreement, however, the 2006 Agreement pertains to permanent downloads in addition to conditional downloads and streams.  The first part of the 2006 Agreement governs permanent downloads and the Additional Rights Addendum ("ARA") governs conditional downloads and streams.

Under the 2006 Agreement, Rounder's responsibility for obtaining mechanical licenses was more circumscribed.  Section 2.2.1 of the ARA makes Napster responsible

4

for applying for mechanical licenses for Streaming and Conditional Downloading, (2006 Agreement § 2.2.1(a)(ii)), with the following exception:   In turn, Section 2.2.1(a)(iii) provides: "If the Company is not a Harry Fox Agency ("HFA") publisher principal or has elected not to 'opt in' to the voluntary blanket license agreed to by HFA with respect to mechanical licenses for digital rights ('the HFA Deal'), the Company will obtain any pay for mechanical licenses for use by Napster of compositions embodied in Controlled Masters, if any."  (Id. 2.2.1(a)(iii).)  With respect to permanent downloads, the 2006 Agreement provides that, "[u]pon delivery of Company Content to Napster, Company will notify Napster of any Company content to which it or its affiliates control the publishing rights ('Controlled Masters') or which, to its knowledge, is considered to be 'in the public domain' with respect to music publishing rights."  (Id. § 2.2(c)).[6]

Like the 2001 Agreement, the 2006 Agreement provides for reciprocal indemnity obligations.  (Id. § 10).  Rounder must indemnify Napster for any breach of the agreement or any claim that Napster's use of the Company Content infringes the rights of any third party.  The 2006 Agreement, however, requires the indemnitee obtain the written consent of the indemnitor prior to incurring any indemnifiable costs.  (Id. §§ 10.1, 10.2 ("[N]o payments shall be made nor costs incurred in connection with any such claim without the prior written consent of [the other party], such consent not to be unreasonably withheld.").

On December 15, 2006, approximately eight months after the 2006 Agreement took effect, the MCS Parties filed another copyright infringement action against Napster in the Middle District of Tennessee ("Second Infringement Action").  (SAC ¶ 11); see

---

[6] While not directly relevant to the parties' dispute, Section 2.2 of the Main Agreement, "Third Party Rights," states that Rounder is responsible for obtaining mechanical licenses "for musical compositions on Company Masters delivered to consumers as Permanent Downloads."  (2006 Agreement § 2.2(a)(ii)).

5

Docket in MCS Music Am., Inc. v. Napster, Inc., No 3:06-cv-01197 (M.D. Tenn.).  Once again, the MCS Parties claimed that Napster made their copyrighted musical compositions available for streaming and conditional downloads without obtaining the necessary mechanical licenses.  (SAC ¶ 11; Complaint in Second Infringement Action ("Second Infringement Complaint") ¶¶ 21-101, Baum Decl., Ex. E).  In the Second Infringement Action, the total number of works at issue was reduced from 800 to 344, but out of the 344 works, 172 were embodied in sound recordings provided by Rounder.  (SAC ¶¶ 11-12.)

In 2007, the Second Infringement Action was transferred to the United States District Court for the Central District of California and consolidated with a declaratory judgment action filed by Napster against the MCS Parties seeking a declaration of non-infringement.  (Id. ¶11); see Dockets in MCS Music Am., Inc. v. Napster, Inc., No. 2:07-cv-02297 (C.D. Cal.) & Napster, Inc. v. MCS Music Am., Inc., No. 2:06-cv07285 (C.D. Cal.).  Napster and the MCS Parties ultimately entered into a confidential settlement of the claims in the First and Second Infringement Actions (the "Infringement Actions"), and in the summer of the 2008, the Second Infringement Action was dismissed with prejudice.  (SAC ¶ 12); see Docket in Napster, Inc. v. MCS Music Am., Inc., No. 2:06-cv07285 (C.D. Cal.).

After the settlement, Napster allocated the costs of defending and settling the Infringement Actions to its various content providers "based on a percentage equal to the number of tracks provided by each label, divided by the total number of tracks named in the lawsuits."  (SAC ¶¶ 13, 22).  Thereafter, on October 22, 2008, Napster demanded that Rounder indemnify it pursuant to the 2001 Agreement for the costs it incurred litigating

6

and settling the Infringement Actions. (Id. ¶¶ 13-14). Rounder refused the demand. (Id. ¶ 14).

According to the Second Amended Complaint, Rounder "has suggested" that the 2001 Agreement is inoperative and the 2006 Agreement controls any claimed right to indemnification. (Id. ¶¶ 19, 22). In light of this, on May 21, 2009, four months after this action was commenced, Napster demanded indemnity from Rounder pursuant to the 2006 Agreement. (Id. ¶ 22.) Rounder once again refused to indemnify Napster for the costs incurred in connection with the Infringement Actions. (Id. ¶ 23.) Notwithstanding, Napster alleges that it "has performed all of the terms and conditions required to be performed by it under the . . . [2001 and 2006] Agreement[s], and/or is otherwise excused from performance." (Id. ¶¶ 16, 25).

**II. Procedural History**

Napster commenced this action on January 13, 2009. Its initial Complaint asserted a single claim for breach of the 2001 Agreement without mentioning the 2006 Agreement. Rounder moved to dismiss for failure to state a claim under Rule 12(b)(6). On August 13, 2009, after the motion to dismiss was fully briefed, Napster filed a First Amended Complaint.[7] A day later, Napster filed the Second Amended Complaint, asserting two claims, one for breach of the 2001 Agreement and the other for breach of the 2006 Agreement. Napster seeks to recover damages in excess of $1.3 million. Rounder moved to dismiss the Second Amended Complaint on October 2, 2009.[8]

---

[7] Rounder's motion to dismiss was terminated as moot and the Court ordered Napster to pay Rounder $2,500 for its belated amendment of the complaint.
[8] Since the parties are diverse and the amount in controversy exceeds $75,000, the Court is possessed of diversity jurisdiction. See 28 U.S.C. § 1332.

**III. Analysis**

When considering a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court assumes all facts alleged in the complaint are true, and draws all reasonable inferences in favor of the plaintiff. Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007). Incantation of the "elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949-50 (2009). To avoid dismissal, the complaint must contain "enough facts to state a claim to relief that is plausible on its face," that is to say facts that "nudge [] [the plaintiff's] claims across the line from conceivable to plausible . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility, in turn, requires only that the allegations in the complaint "raise a reasonable expectation that discovery will reveal evidence" in support of the claim. Id. at 555; see also Arar v. Ashcroft, 585 F.3d 559, 617 (2d Cir. 2009).

"To prevail on a breach of contract claim under New York Law, a plaintiff must prove (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." Terwilliger v. Terwilliger, 206 F.3d 240, 246 (2d Cir. 2000) (internal quotation marks omitted).[9] In interpreting a contract, the goal is "to give effect to the intention of the parties as expressed in the unequivocal language they have employed." Id. at 245. Whether a "contract is unambiguous is a question of law for the court." Cont'l Ins. Co. v. Atl. Cas. Ins. Co., 603 F.3d 169, 180 (2d Cir. 2010). "If the contract is unambiguous, its meaning is likewise a question of law for the court to

---

[9] The 2001 and 2006 Agreements both contain choice-of-law provisions designating New York law as controlling. (2001 Agreement § 12; 2006 Agreement § 11). Neither party challenges the applicability of New York law.

8

decide." JA Apparel Corp., 568 F.3d at 397. Absent ambiguity, the intent of the parties is determined objectively by looking to the language of the contract; subjective intent is irrelevant. See Cutter v. Peterson, 203 A.D.2d 812, 814 (App. Div. 3d Dep't 1994); Klos v. Lotnnicze, 133 F.3d 164, 168 (2d Cir. 1997). When interpreting an unambiguous contract, "the court is to consider its '[p]articular words' not in isolation 'but in light of the obligation as a whole and the intention of the parties manifested thereby.'" JA Apparel Corp. v. Abboud, 568 F.3d 390, 397 (2d Cir. 2009) (quoting Kass v. Kass, 91 N.Y.2d 554, 566 (1998)). In addition, a contract should not be interpreted so as to render a clause superfluous or meaningless. Galli v. Metz, 973 F.2d 145, 149 (2d Cir.1992).

**A. The 2001 Agreement**

Napster claims that Rounder breached the 2001 Agreement by refusing to indemnify it for the costs incurred in connection with the Infringement Actions. Rounder argues that since the 2006 Agreement expressly terminated and superseded the 2001 Agreement, any claim for breach of the 2001 Agreement fails as a matter of law. In the alternative, Rounder contends that it was Napster's responsibility to obtain mechanical licenses under the 2001 Agreement. Thus, according to Rounder, it did not breach the 2001 Agreement by refusing to indemnify Napster. Because the Court agrees with Rounder's termination argument, it need not consider the 2001 Agreement's indemnification requirements.

Under clearly established New York law, "[o]nce an agreement has been rescinded, there can be no claims based on the cancelled agreement unless the right to make such claims is expressly or impliedly reserved within the terms of the rescission." Milan Music, Inc. v. Emmel Commc'ns Booking, Inc., 27 A.D.3d 206, 206 (App. Div. 3d

9

Dep't 2007); see also 22A N.Y. Jur.2d Contracts § 489.  This rule applies with equal force when the rescinded contract was breached before it was rescinded.  See, e.g., Penguin Group (USA) Inc. v. Stenbeck, 537 F.3d 193, 200 (2d Cir. 2008) ("Once terminated and superseded, the new contract provides all of the parties' obligations and remedies for breach [of the rescinded contract]."); Northville Indus. Corp. v. Fort Neck Oil Terminals Corp., 100 A.D.2d 865, 867 (App. Div. 2d Dep't 1984), aff'd, 64 N.Y.2d 930 (1995); Cam-Am Organic Foods, Ltd v. Philips Bus. Sys., Inc., 83 A.D.2d 528, 529 (App. Div. 1st Dep't 1981); 22A N.Y. Jur. Contracts § 497 ("In the absence of circumstances pointing to a different intention, neither party can maintain an action on a rescinded contract for a previous breach thereof.").

  The 2006 Agreement clearly and unambiguously terminates and supersedes the 2001 Agreement and all previous commitments with respect thereto.  (2006 Agreement at 1 ("WHEREAS, Company and Napster have previously entered into a certain Content Agreement dated as of August, 2001 (the 'Prior Agreement'), which the parties wish to hereby terminate and supersede."); § 13 ("This Agreement will constitute the entire agreement between the parties with respect to the subject matter hereof and will supersede all previous commitments with respect hereto.")).  Napster's argument in opposition is based largely on a number of irrelevant cases concerning the requisites of an effective release.  Napster relied heavily on Mallad Construction Corp. v. County Federal Savings & Loan Association, a case that hurts its argument more than it helps.  32 N.Y.2d 285 (1973).  Under Mallad Construction, when a contract is rescinded, claims based on the contract are extinguished unless they are "expressly or impliedly reserved."  Id. at 293.  Napster argues that because the 2006 Agreement did not specifically exclude the

10

prior obligations, they still apply.  (See Mem. in Opp. at 10).  But Napster has it backwards.  Unless the claim of breach is specifically preserved, it is gone and must be judged solely by the new contract.  The presumption, in other words, is that claims based on a rescinded contract do not survive the rescission.  Nothing in the 2006 Agreement indicates the parties' intent to reserve claims based on the "terminated and superseded" 2001 Agreement; therefore, all such claims were extinguished.

Napster's contention that it is improper to resolve "a question of intention" at the motion to dismiss stage is meritless.  There is nothing ambiguous about the 2006 Agreement as it relates to the 2001 Agreement.  Napster simply asserts that it did not intend to extinguish claims based on the 2001 Agreement.  This assertion is, however, belied by the clear language of the 2006 Agreement.  The phrase "terminate and supersede" is pellucidly clear.  See Health-Cham Corp. v. Baker, 915 F.2d 805, 811 (2d Cir. 1990) ("The word 'supersede' has been defined at various times to mean 'set aside,' 'annul,' 'displace,' 'make void,' and 'repeal.'"); 26 R. Lord, Williston on Contracts § 68:3 (4th ed. 2010) ("[W]hether a contract is spoken of as terminated, abrogated, annulled, avoided, discharged, or rescinded is not in itself important.").  Since the 2006 Agreement evinces – without ambiguity – Napster and Rounder's intent to rescind the 2001 Agreement, and does not indicate an intention to reserve claims based on the 2001 Agreement, Napster is precluded – as a matter of law – from maintaining a claim for breach of the 2001 Agreement.  See Carvel Corp v. Eisenberg, 692 F. Supp. 182, 184 (S.D.N.Y 1988) ("Under New York law, the intent of the parties is determined, where possible, by the plain language of the contract.").  Accordingly, Rounder's motion to dismiss Napster's claim for breach of the 2001 Agreement is granted.

**B. The 2006 Agreement**

As with the 2001 Agreement, Napster claims that Rounder breached the 2006 Agreement by refusing to provide indemnity for costs incurred in connection with the Infringement Actions. Rounder makes two arguments to dismiss this claim. Rounder argues first that Napster is not entitled to indemnity under the 2006 Agreement because it did not seek or obtain Rounder's written consent prior to incurring litigation and settlement costs. Next, Rounder contends that it was not responsible for obtaining mechanical licenses for the works at issue in the Infringement Actions and so it is not obligated to indemnify Napster. Rounder's arguments are correct; and this claim is also dismissed.

**i. Consent of Rounder**

A condition precedent is "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co., 86 N.Y.2d 685, 690 (1995). Express conditions (those agreed to and imposed by the parties) "must be literally performed." Id.; see DBT GmbH v. J.L. Mining Co., 544 F. Supp. 2d 364, 380 (S.D.N.Y. 2008).

Section 10.2 of the 2006 Agreement requires Napster to obtain Rounder's "written consent" prior to making any payments or incurring any costs in connection with an indemnifiable claim, "except for as required by a judgment of a court of competent jurisdiction." (2006 Agreement § 10.2). Rounder's consent must not, however, "be unreasonably withheld." (Id.) This advance-consent provision is an express condition precedent to Rounder's duty to indemnify Napster, and such provisions "are routinely

12

enforced" under New York law.  Cont'l Cas. Co. v. Ace Am. Ins. Co., No. 07 Civ. 958(PAC), 2009 WL 857594, at *3 (S.D.N.Y. Mar. 31, 2009) (citing TLC Beatrice Int'l Holdings, Inc. v. Cigna Ins. Co., No. 97 Civ. 8589(MBM), 2000 WL 282967, at *4 (S.D.N.Y. Mar. 16, 2000), aff'd sub nom, Lewis v. Cigna Ins. Co., 234 F.3d 1262 (2d Cir. 2000) (unpublished table decision)).

Rounder argues that Napster's claim for breach of the 2006 Agreement must be dismissed because Napster failed to comply with Section 10.2's advance-consent requirement.  The Second Amended Complaint does not specifically allege that Napster obtained, or even attempted to obtain, Rounder's written consent prior to incurring costs in connection with the Infringement Actions.  Indeed, Napster contends that it "made an indemnity demand to Rounder" under the 2001 and 2006 Agreements "[s]ubsequent to settlement of the claims."  (SAC ¶¶ 13, 22).  Rounder was within its rights to prefer a court judgment as opposed to a settlement.  Its disagreement with Napster's preference to settle, absent further factual allegations, does not constitute unreasonable withholding. Since Rounder did not consent to the settlement, Napster had to get a "judgment of a Court of competent jurisdiction" in order to be indemnified.  Instead Napster chose to settle without prior consent; accordingly, it is not entitled to indemnification.

Napster's allegation that it "has performed all of the terms and conditions required to be performed by it under the 2006 Agreement, and/or is otherwise excused from performance" is merely a legal conclusion.  (SAC ¶ 25).  It also contradicts the more specific allegations that Napster only sought subsequent approval.  The cases Napster cites holding that Fed. R. Civ. P. 9(c) "requires no more than a general statement by a plaintiff that all conditions precedent have been satisfied to successfully make out a

13

claim" all predate Twombly and Iqbal. Internet law Library, Inc. v. Southridge Capital Mgmt., LLC, 223 F. Supp. 2d 474, 490 (S.D.N.Y. 2002); see also Randolph Equities, LLC v. Carbon Capital, Inc., No. 05 Civ. 10889(PAC), 2007 WL 914234, at *4 (S.D.N.Y. Mar. 26, 2007). Accordingly, Napster's claim for breach of the 2006 Agreement is dismissed for failure to comply with the advance-consent provision.

**ii. Indemnification Requirement**

Section 10.2 of the 2006 Agreement states that Rounder will indemnify Napster for all claims arising out of (1) a breach of any representation or warranty by Rounder; or (2) a claim that Napster's use of the Company Content infringes the rights of any third party. Here, the Infringement Actions only concerned the failure to procure necessary mechanical licenses and therefore were limited to infringement of musical compositions, not sound recordings. Section 2.2.1(a)(ii) of the ARA states that Napster is "responsible for applying for mechanical licenses for Streaming and Conditional Downloading . . . ." If Rounder is "not a Harry Fox Agency ('HFA') publisher principal or has elected not to 'opt in' to the voluntary blanket license agreed to by HFA with respect to mechanical licenses for digital rights," however, Section 2.2.1(a)(iii) of the ARA provides that Rounder "will obtain and pay for mechanical licenses for the use by Napster of compositions embodied in Controlled Masters, if any." Napster claims that Rounder failed to procure mechanical licenses for "controlled masters," and so, Rounder must provide indemnity under Section 10.2. Rounder, on the other hand, contends that Section 2.2.1(a)(iii) cannot possibly apply because a third party would not have standing to sue for infringement of a controlled master, the rights to which Rounder controls by definition. (Reply Mem. at 14-15.)

14

"Controlled masters" are described as "Company Content to which [Rounder] or its affiliates control the publishing rights." (2006 Agreement § 2.2(c)). Because "Company Content" is defined as sound recordings controlled by Rounder and "Controlled Masters" are Company Content to which Rounder has the publishing rights, publishing rights must refer to the right to commercially exploit the musical composition underlying the sound recording. Napster asserts that "Rounder controlled and/or controls the publishing rights to all or nearly all of the Rounder content at issue" in the Infringement Actions. Rounder responds that "if Rounder had controlled the publishing rights, MCS would never (and could never) have brought the litigation." (Reply Mem. at 15).

The 2006 Agreement requires Rounder to obtain the mechanical licenses for Napster's use of any Company Content to which Rounder controls the publishing rights but chooses not to participate in the Harry Fox Agency licensing scheme. Accordingly, Rounder is only required to obtain and pay for mechanical licenses in situations where Rounder issues those very licenses. By definition, then, Napster cannot be subject to liability for Rounder's failure to obtain a license, because only Rounder would have standing to sue for infringement in such a case.

This conclusion raises the question of why Section 2.2.1(a)(iii) exists in the first place. Obtaining a mechanical license entails cumbersome procedures, particularly for digital music services like Napster. See NYMusic Copyright.org, http://nymusiccopyright.org/book/export/html/12 (last visited Dec. 9, 2010). Harry Fox Agency is a collective agent that enable this process, so it is reasonable that, if Rounder chooses not to participate in Harry Fox licensing, it (1) should have the burden of

15

obtaining the mechanical license when it is the entity that issues the license, and (2) should be prevented from charging Napster for any costs entailed. See id. This reading of the contract does not, therefore, render Section 2.2.1(a)(iii) meaningless.

That said, Napster misreads the 2006 Agreement as it applies to the musical works disputed in the Infringement Actions. Rounder had no obligation to obtain mechanical licenses for these works; that was Napster's duty. The MSC Music Parties cannot sue for infringement of copyrights to which Rounder owns the rights. Napster has not addressed this paradox in its pleadings. It has offered no set of facts or alternative interpretation whereby its claim is viable.

Accordingly, the Second Amended Complaint has failed to state a claim for breach of the 2006 Agreement both because Napster did not comply with the advance consent provision and because Rounder had no obligation to acquire the mechanical licenses for the musical compositions in the MCS Infringement Actions.

## Conclusion

For the foregoing reasons, Rounder's motion to dismiss is GRANTED. The Clerk is directed to terminate the case.

Dated: New York, New York
       January 25, 2011

SO ORDERED

_/s/ Paul A. Crotty_
PAUL A. CROTTY
United States District Judge